**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GEORGE THOMPSON,** *Plaintiff*, v. **KESSLER INSTITUTE FOR REHABILITATION, INC.,** *Defendant.* | **Civil Action No. 15-5533** **OPINION** |

**THIS MATTER** comes before the Court by way of Defendant Kessler Institute for Rehabilitation, Inc.'s ("Kessler") motion for summary judgment against Plaintiff George Thompson. ECF No. 17. Thompson opposes the motion. ECF No. 21. For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

In this employment dispute, Plaintiff George Thompson alleges that Kessler discriminated against him because of his disability and retaliated against him for taking disability and family leave.

**A. Employment at Kessler**

Thompson was employed at Kessler as a per diem Rehabilitation Assistant in West Orange, New Jersey from July 27, 2009 through November 21, 2013, when his employment was terminated. Def.'s Stmt. of Facts ¶¶ 1, 42, ECF No. 17-2.[1] As a Rehabilitation Assistant,

---

[1] The facts are taken from Defendant's Statement of Undisputed Facts, and are not disputed unless otherwise noted.

1

Thompson's duties required the ability to lift and physically assist patients. Id. ¶ 4. Thompson received Kessler's Employee Handbook at the beginning of his employment. Id. ¶ 7.

In 2012, Thompson burned his fingers, and took leave pursuant to the Family Medical Leave Act ("FMLA"). Def.'s Stmt. ¶ 14. During his leave of absence, Thompson received temporary disability payments of $456 a week, which was $24 less than his usual paycheck. Id. ¶ 16. In April 2013, Thompson tore a ligament in his left hand, and once again applied for FMLA leave. Id. ¶¶ 17-18. On May 3, 2013, Brittany Shakespeare, a Leave Coordinator of Select Medical Corporation, informed Thompson that he was eligible for FMLA leave, and requested completion of additional forms. Id. ¶¶ 19-22. Upon receipt of the requested documents, Shakespeare granted Thompson leave on May 10, 2013. Id. ¶ 27.

Pursuant to the terms of Kessler's Employee Handbook, Thompson was required to consult with his supervisors to schedule a leave of absence and obtain permission to be out of work. Id. ¶ 24. He was also required to provide Kessler with status reports concerning his condition every two weeks. Id. ¶ 38. Thompson requested leave from July 3 to July 23, 2013. Thompson Dep. Tr. 143:21-25, Motzenbecker Decl., Ex. B, ECF No. 17-5 ("Thompson Tr.").

Although Thompson did not write or email Shakespeare during his leave, he maintains that he telephoned Shakespeare every two weeks. Id. ¶¶ 39-40. The parties dispute whether Thompson's leave was subsequently extended. While Kessler contends that it never extended Thompson's leave, he argues that it was when Shakespeare told him "When you are ready to come to work, let me know." See Def.'s Stmt. ¶ 41; Pl.'s Stmt. ¶ 41. Thompson received disability payments until November 2013. Thompson Tr. 143:21-25.

On January 6, 2014, the date on which Thompson was cleared for work by his physician because he was fully recovered, he returned to Kessler's West Orange campus. Id. ¶ 49. There,

2

Kenneth Caldera informed Thompson that he would need to reapply for his former position. Id. ¶ 50. Caldera showed Thompson a letter, dated November 6, 2013 from him to Thompson. It stated that because "he had not kept in touch with Kessler during his medical leave," he would be required to contact his supervisors, Jay Rosenberg or Cynthia Burrows, no later than November 18, 2013. Id. ¶ 42. Failure to do so would result in the termination of his employment. Id. Thompson maintains that he did not receive the letter. Id. ¶ 44; Pl.'s Stmt. ¶ 44. The parties agree that Thompson did not communicate with Rosenberg or Burrows about his return to work status. Def.'s Stmt. ¶ 46.

Upon Caldera's request, Thompson completed an Application for Employment date January 6, 2014. Id. ¶ 49; Motzenbecker Decl. Ex. P, ECF No. 17-19. No one from Kessler ever responded to Thompson with respect to his application for re-employment. Def.'s Stmt. ¶ 54. In August 2014, he requested that Caldera provide him with a letter confirming his dates of employment. Id. ¶ 55. Kessler provided the requested letter on August 6, 2014, which confirmed that Thompson was employed from July 2009 through November 21, 2013. Id. ¶ 56. Motzenbecker Decl., Exhibit M.

**B. EEOC Complaint and Subsequent Litigation**

In November 2014, Thompson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] Pl.'s Stmt. ¶ 62. Thompson then initiated this lawsuit on July 14, 2015. See Compl., ECF No. 1. His Complaint asserted causes of action for (1) violation of the Americans with Disabilities Act ("ADA") for failure to engage in the interactive process and to provide a reasonable accommodation in the form of extended leave; (2)

---

[2] The parties dispute the specific date of the EEOC Charge. Thompson asserts that he filed it on November 12, 2014, while Kessler states it was filed on November 21, 2014. Id.

violations of the FMLA for retaliation and interference;[3] and (3) violations of the New Jersey Law Against Discrimination ("NJLAD"). Compl. ¶¶ 36-42. Kessler answered the Complaint, and now seeks summary judgment on all counts. ECF No. 17.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

### A. FMLA Claim

Kessler contends that it is entitled to summary judgment on Thompson's unlawful retaliation claim in violation of the FMLA because Thompson has not established a causal nexus between the exercise of his protected rights under the FMLA and Kessler's decision to terminate his employment and not rehire him. The Court disagrees.

Retaliation claims are subject to the McDonnell-Douglas burden-shifting framework. Parker v. Verizon Pa., Inc., 309 Fed. App'x 551, 555 (3d Cir. 2009). Under this framework, a

---

[3] Thompson has withdrawn his claim of interference under the FMLA and liquidated damages under the FMLA. He opposes summary judgment with respect to retaliation under the FMLA. Pl.'s Opp'n at 2, ECF No. 21.

plaintiff must first establish a prima facie case of unlawful action by the employer. McDonnell Douglas, 411 U.S. at 802. "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001)).

A prima facie retaliation claim under the FMLA requires a showing that: (1) the plaintiff invoked his right to FMLA-qualifying leave; (2) he suffered from an adverse employment action; and (3) there is a causal connection between the adverse employment decision and the FMLA leave. Cunningham v. Nordisk, 615 Fed. Appx. 97, 102 (3d Cir. 2015). Whether a causal link exists "must be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n. 5 (3d Cir.2000). To demonstrate a causal connection, a plaintiff generally must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

If the plaintiff meets this initial burden, the burden shifts to the defendant, who must articulate legitimate, non-discriminatory reasons for its employment decision. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008); Victor, 203 N.J. at 408 n.9. Once the employer meets its burden of articulating a legitimate, non-discriminatory reason, the burden again shifts to the employee to present evidence from which a factfinder could infer that the proffered reasons were pretextual. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

The parties do not dispute that Thompson meets the first two prongs of a retaliation claim, but dispute whether he can demonstrate a causal connection between his termination and his taking FMLA leave. Kessler contends that it terminated Thompson due to his job abandonment, and that Thompson has not offered any reasons to show that this explanation was pretextual. Def.'s Br. at 10-11. Thompson claims that he did not abandon his job, and Kessler's after-the-fact justifications show that there was a causal relationship between his termination and his FMLA leave. Pl.'s Opp'n at 3-4.

A review of the record shows that several questions of fact preclude summary judgment on this issue. These include: (1) whether Thompson was in contact with Brittany Shakespeare, the Leave Coordinator for Select Medical Corporation, throughout his leave; (2) whether Shakespeare told Thompson, "When you are ready to come to work, let me know;" (3) whether such a statement would constitute an extension of his leave; and (4) whether Thompson received a letter dated November 6, 2013 from Kessler informing him that he would be terminated if he did not notify his supervisors of his intentions by November 18, 2013. These questions of fact touch upon key components of the parties' arguments: namely whether Thompson abandoned his position. Accordingly, Thompson's FMLA retaliation claim cannot be dismissed.

**B. ADA**

Thompson asserts a failure to accommodate claim under the ADA for Kessler's refusal to grant him extended leave until he was able to return to work. Kessler contends that Thompson's ADA claim is time-barred. The Court agrees.

A plaintiff alleging a claim under the ADA must file a Charge of Discrimination with the EEOC within 180 days of the alleged unlawful practice, or within 300 days if filed with a state agency. See 29 U.S.C. § 626(d)(1)(4) (2006) (providing 180 days for EEOC); 42 U.S.C. § 2000e–

5(e)(1) (2006) (providing 300 days for state agency). A plaintiff must file a claim in court within 90 days of receiving a right-to-sue letter from the EEOC or state agency. See 42 U.S.C. § 2000e–5(f)(1) (2006); Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir.1999) (explaining that Title VII procedures set out in 42 U.S.C. § 2000e–5 apply to ADA claims); see also 42 U.S.C. § 12117. These filing requirements are treated as statutes of limitations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). A cause of action accrues once the plaintiff is on notice of the adverse employment action. Watson v. Eastman Kodak Co., 235 F.3d 851, 852-53 (3d Cir. 2000) ("An adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that action.") (citing Delaware State College v. Ricks, 449 U.S. 250 (1980)).

Here, Thompson experienced an adverse action when he discovered that he was not granted an accommodation of an extension of leave, and was instead terminated. Viewing the facts in the light most favorable to Thompson, the latest that he was on notice of the adverse action was January 6, 2014, when he appeared at Kessler's West Orange campus, and was informed that he would need to reapply for his position. Thompson therefore had until 300 days later, or November 2, 2014, to file a Charge of Discrimination with the EEOC. However, he did not file a Charge until, at the earliest, November 12, 2014—10 days late. Accordingly, summary judgment must be granted as to Thompson's ADA claims.

Thompson argues that the claim did not accrue until August 2014, when he was informed by letter that his dates of employment were July 27, 2009 to November 21, 2013. Pl.'s Opp'n at 2, n.1. However, the pertinent date here is the day when Thompson received notice of the adverse action: Kessler's alleged "fail[ure] to engage in the interactive process and provide a reasonable accommodation in the form of an extended leave." Compl. ¶ 36. On the record before the Court,

7

the latest date that a reasonable jury could find that Thompson was aware that he was not granted extended leave is January 6, 2014. The record shows that on that day, Thompson returned to Kessler's West Orange campus, and was told that he would need to reapply for his position. Thompson Dep. T121:05-19. He then filed an employment application on the same day. See Motzenbecker Decl. Ex. P, ECF No. 17-19. The latest day Thompson should have known that his employment had been terminated is therefore January 6, 2014.

As the Court finds that Thompson's failure to accommodate claim is time-barred, it does not reach Kessler's arguments for summary judgment on the merits.[4]

**C. NJLAD**

Kessler lastly argues that it must be awarded summary judgment on Thompson's NJLAD claims because he cannot establish a prima facie NJLAD violation. The Court agrees.

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5–4.1. "Generally, a prima facie case of failure to accommodate requires proof that (1) the plaintiff had a LAD handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse

---

[4] Although he does not make such a claim in his Complaint, Thompson appears to argue that Kessler also discriminated against him in violation of the ADA when it refused to rehire him. Pl.'s Opp'n at 3-4. To the extent that Thompson asserts an ADA claim based on Kessler's decision not to rehire him, such a claim accrued on August 14, 2014, and would not be time-barred. Nonetheless, it must be dismissed for failure to establish a prima facie case. To establish a prima facie case under the ADA, a plaintiff must show: (1) that he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an adverse employment decision that was motivated by disability discrimination. Gagliardo v. Connaught Labs, 311 F.3d 565, 568 (3d Cir. 2002). Here, any claims that arose from Kessler's decision not to rehire Thompson occurred after Thompson was fully recovered in 2014. In other words, he was no longer disabled within the meaning of the ADA.

employment action because of the handicap." Bosshard v. Hackensack University Medical Center, 345 N.J. Super. 78, 91 (2001) (citing Seiden v. Marina Assoc., 315 N.J. Super. 451 (1998)).

Kessler argues that Thompson does not meet the second prong of an NJLAD claim because he was unable to perform the essential functions of his job as a Rehabilitation Assistant. Def.'s Br. at 16-17. Thompson argues that "extended leave can be a reasonable accommodation, which, if given, could allow someone to return and perform the essential functions of a job." Pl.'s Opp'n at 9. Although extended leave may be a reasonable accommodation under the ADA, it is not available under NJLAD.

Unlike the ADA, NJLAD provides an exception to an employer's obligation to provide a reasonable accommodation "where it can reasonably be determined that an applicant or employee, as a result of the individual's disability, cannot *presently perform* the job even with a reasonable accommodation." N.J. Admin. Code tit. 13, § 13–2.8(a). The Third Circuit has reasoned:

> The NJLAD regulation thus requires that the handicapped employee be able to perform the essential functions of his job *during* the application of the reasonable accommodation—that is, *at the same time* that the reasonable accommodation is being implemented.

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004). An extended leave is therefore not a reasonable accommodation under NJLAD. Id. As in Conoshenti, requiring Kessler to grant Thompson a leave of absence as an accommodation following his FMLA leave would not have enabled him to presently perform his job. "[I]t would have excused [Thompson] from present performance contrary to the explicit requirements of the NJLAD regulation." Id. Thompson's NJLAD claim is therefore dismissed to the extent that it arises from Kessler's failure to grant him an extended leave of absence until he was fully recovered.

Thompson also argues that Kessler an NJLAD violation occurred when Kessler "refused to give him light duty." Pl.'s Opp'n at 9. As an initial matter, the Court notes that this is the first time that Thompson has pointed to Kessler's refusal to give him light duty as the basis for an NJLAD claim. In general, a plaintiff may not amend his complaint by raising new arguments in an opposition brief to a motion for summary judgment, and are considered to be waived. Warfield v. SEPTA, 460 Fed. App'x 127, 132 (3d Cir. 2012).

Even assuming that these arguments are not barred, Thompson has still failed to establish a prima facie case for several reasons. First, Thompson has not presented any evidence that he made an actual request for light duty work. The NJLAD places the duty on the employee to initiate a request for a disability accommodation. Fitzgerald v. Shore Memorial Hosp., 92 F. Supp. 3d 214, 238 (D.N.J. 2015). "Although there is no specific formula . . . the plaintiff must 'nonetheless make clear that the employee wants assistance for his or her disability.'" Id. (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999)). Here, Thompson stated at his deposition that his orthopedic surgeon "put me on light duty. Kessler refused to give me a light duty. They asked me to go home, take care of my hand, and come back 100 percent because they didn't have light duty." Thompson Tr. 80:25-81:05. This is insufficient. Thompson has shown that he was not given light duty, but has not shown that he requested it in the first place. Second, Thompson has not provided any evidence to suggest that another position involving light duty was available. Under NJLAD, the "employee still has the burden to . . . show that reasonable accommodation for her disability was possible even where the employer acted wrongfully in failing to engage in the interactive process to find such an accommodation." White v. Univ. of Med. & Dentistry of New Jersey, No. A-6333-11T4, 2013 WL 4607573, at *3 (N.J. App. Div. Aug. 30, 2013). Thompson has not done so here. He has not pointed to any open positions that

consist primarily of light work. Furthermore, Thompson has not shown that a Rehabilitation Assistant could still perform the essential functions of his job by performing light work alone. Indeed, the specific duties of the position as outlined in its description primarily include physical tasks such as assisting patients with daily activities, reinforcing rehabilitation techniques including transfers, and collecting and transporting specimens. Rehabilitation Assistant Position Description, Motzenbecker Decl. Ex. D., ECF No. 17-7. Accordingly, Thompson has failed to establish a prima facie case of an NJLAD violation based on not being assigned light duty.

Because Thompson cannot show that he was able to perform his job despite his disability, summary judgment must be granted as to Thompson's NJLAD claim.

### III. CONCLUSION

For the reasons set forth herein, Defendant Kessler's motion for summary judgment is **GRANTED** as to Plaintiff Thompson's ADA and NJLAD claims, and **DENIED** as to Thompson's FMLA retaliation claim.

**Dated: August 31, 2017**

>  */s Madeline Cox Arleo*
> **Hon. Madeline Cox Arleo**
> **UNITED STATES DISTRICT JUDGE**